IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSEPH WILKINS,

        **Plaintiff,**

v.

LILLIAN OVERALL,

        **Defendant.**

Case No. 16-cv-01324-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Pending before the Court is a Motion for Summary Judgment (Doc. 170) filed by Defendant Dr. Lillian Overall and a Motion for Partial Summary Judgment as to Defendant Lillian Overall (Doc. 175) filed by Plaintiff Joseph Wilkins. For the reasons set forth below, the Court grants in part and denies in part the Motion for Summary Judgment filed by Dr. Overall and denies the Motion for Partial Summary Judgment filed by Wilkins.

## BACKGROUND

    Plaintiff Joseph Wilkins, a former inmate of the Illinois Department of Corrections, commenced this action by filing a *pro se* Complaint pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Vandalia Correctional Center ("Vandalia"). (Doc. 1).[1] Wilkins claims he was deprived of appropriate and timely dental care and retaliated against for filing grievances seeking such care. Wilkins is currently proceeding with a First Amendment claim against Dr. Overall for retaliating against him for filing grievances by deliberately delaying dental treatment and medication for his emergency dental needs and pain

---

[1] Following the close of discovery, the Court recruited counsel to represent Wilkins for the remainder of the case. (Doc. 125).

(Count 1), and an Eighth Amendment claim against Dr. Overall for deliberate indifference to his serious dental needs by ignoring his request slips for treatment, delaying treatment, refusing to prescribe him pain medication, and refusing to pull his teeth on an emergency basis (Count 3). (Doc. 16). On March 9, 2020, Dr. Overall filed a Motion for Summary Judgment. Wilkins filed a response in opposition (Doc. 185), and Dr. Overall filed a reply brief (Doc. 187). Also, on March 9, 2020, Wilkins filed a Motion for Partial Summary Judgement as to Defendant Lillian Overall (Doc. 175). Dr. Overall filed a response in opposition. (Doc. 179).

## RELEVANT FACTS

Wilkins entered the custody of the Illinois Department of Corrections on September 24, 2015, at the Northern Reception Center at Stateville Correctional Center ("Stateville"). (Doc. 174-1, p. 1; Doc. 174-4, p. 3). While at Stateville, he underwent a medical and dental screening examination, and dental x-rays were taken. (Doc. 174-6, p. 53; Doc. 185, p. 2; Doc. 187-1, p. 3). Wilkins was transferred to Vandalia on November 4, 2015. (Doc. 174-1, p. 1; Doc. 185, p. 1). The next day, on November 5, 2015, the general dentist at Vandalia, Dr. Overall, reviewed Wilkins's x-rays and dental chart from Stateville. (Doc. 174-1, p. 1; Doc. 185, p. 2; Doc. 174-6, p. 52-53). She testified that the records indicated that tooth #16 needed to be extracted and tooth #12 was "down as a cavity that could possibly be filled with a question mark." (Doc. 174-6, p. 53; Doc. 172-5, p. 2). At some point in time, Wilkins submitted an offender request form dated November 5, 2015, addressed to "Medical personal — dentist" stating, "I have [a] frag[]ment in my left upper gums of a tooth that broke. I need it removed. I also need pain medication . . ." (Doc. 172-2, p. 2; Doc. 185, p. 2). The date Wilkins's offender request was reviewed by Dr. Overall is disputed. (Doc. 187-1, pp. 2-4).

Dr. Overall wrote in the dental chart on November 16, 2015, that Wilkins "request dental." (Doc. 172-5, p. 3; Doc. 187-1, p. 5-6). Although the date of submission is disputed, at some point,

Wilkins filed another offender request dated November 24, 2015, stating that he was experiencing severe tooth pain and that he needed emergency dental care. (Doc. 172-2, p. 2; Doc. 187-1, p. 6).

Wilkins was first examined by Dr. Overall on December 3, 2015. (Doc. 187-1, p. 8). At this visit, Wilkins complained about pain in the top left and lower right of his mouth. (*Id.*). Dr. Overall noted that for tooth #16 the structure of the tooth was absent and only the roots remained, the presence of swelling indicated infection, the tooth was non-restorable, and "extract 16." (Doc. 172-5, p. 3; Doc. 174-6, p. 54). Wilkins was placed on the dental extraction list for tooth #16, and Dr. Overall prescribed him 400 mg of Motrin (30 tablets) for pain and 150 mg of the antibiotic Clindamycin (60 tablets)[2] to treat the infection. (Doc. 174-6, pp. 57, 69; Doc. 187-1, pp. 9-10, 25). In the chart, Dr. Overall also recorded moderate cavities in tooth #12 and that Wilkins was informed of "possible extraction after tooth prep for restorative." (Doc. 172-5, p. 3; Doc. 174-6, p. 54).

Wilkins submitted an offender request dated January 17, 2016. (Doc. 172-2, p. 3). Again, the date of submission is disputed. (Doc. 187-1, p. 11). In the offender request, which is addressed to medical personnel, he states that he is experiencing traumatic pain "due to not having my past, present, emergency dental issues addressed." (Doc. 172-2, p. 3).

Wilkins next saw Dr. Overall on January 22, 2016. (Doc. 187-1, p. 10). Dr. Overall recorded that Wilkins inquired about the extraction of tooth #16. (*Id.* at p. 12). Dr. Overall informed him that he had been placed on Vandalia's extraction list. (*Id.*; Doc. 174-6, p. 55). Dr. Overall did not record that Wilkins complained of any pain associated with tooth #16 or that tooth #16 exhibited signs of infection. (Doc. 172-5, p. 3; Doc. 174-6, p. 70). She noted that Wilkins complained of pain caused by tooth #12, identified tooth #12 as non-restorable, and recommended

---

[2] It is undisputed that Wilkins was allergic to penicillin. (*See* Doc. 172-6, p. 6; Doc. 174-9, p. 2; Doc. 174-12, p. 38-39).

extraction. (Doc. 172-5, p. 3; Doc. 174-6, p. 56; Doc. 187-1, p. 12). Dr. Overall did not provide Wilkins any pain medication at this visit or extract tooth #16 or tooth #12. (Doc. 187-1, p. 13).

Dr. Overall next saw Wilkins on February 25, 2016. (Doc. 187-1, p. 13-14). Wilkins informed Dr. Overall that he had dental pain in the upper left part of his mouth. (*Id.* at p. 14). It was noted in the dental chart that tooth #12 had severe decay and was non-restorable. (Doc. 172-5, p. 3). Dr. Overall recorded in the dental chart for this exam that Wilkins was already on the extraction list. (Doc. 174-6, p. 57; Doc. 187-1, p. 17). She testified that Wilkins had a tooth infection and again prescribed him 400 mg of Motrin (30 tablets) for pain and 150 mg of Clindamycin (60 tablets) for the infection. (Doc. 174-6, p. 57; Doc. 187-1, p. 17). Neither tooth #16, nor tooth #12 was extracted at this appointment.

Sometime after the February 25 appointment, Wilkins submitted another offender request dated February 29, 2016. (Doc. 172-2, p. 3; Doc. 187-1, p. 18). The request is addressed to "dentist" and grieves that he has been in pain for almost five months and needs emergency dental procedures. Wilkins also wrote that the Motrin "is next to nothing and almost gone in less than one week due to the great [] pain from dental needs." (Doc. 172-2, p. 3).

Wilkins's next and final visit with Dr. Overall was on March 3, 2016. (Doc. 187-1, p. 19). Dr. Overall recorded that Wilkins reported his tooth was still hurting. (*Id.*). Dr. Overall examined tooth #12 and noted that no swelling was present. (Doc. 172-5, p. 3). She did not extract Wilkins's teeth at this visit and told Wilkins he was already on the extraction list. (Doc. 174-6, p. 59). Dr. Overall provided him 400 mg of Motrin (30 tablets) for his pain. (*Id;* Doc. 187-1, p. 20).

Wilkins then submitted an offender request slip dated March 15, 2016, stating that he was "almost out of pain pills for traumatic dental issues" and requesting a "refill on pain medication or to address issue." (Doc. 172-2, p. 4; Doc. 187-1, p. 20). Wilkins was seen in the healthcare unit for complaints of dental pain on March 18, 2016, and prescribed 200 mg of ibuprofen (18 tablets).

(Doc. 174-1, p. 7; Doc. 174-2, p. 9-11). He submitted another slip dated March 22, 2016, complaining that he was in "excruciating pains due to a tooth that has needed to be extracted for approximately 6 month[s]. There is infection[n] that is causing pain to spread and swelling of my gums. I don't have any pain medication either." (172-2, p. 4; Doc. 187-1, p. 21). Wilkins was scheduled for a dental appointment with Dr. Overall on March 28, 2016, but the appointment was rescheduled. (Doc. 172-5, p. 5). He was then scheduled for a dental appointment on March 30, 2016. On this date, Wilkins opted to go to the law library, rather than his dental appointment. (*Id.*).

Wilkins's anticipated extraction date for tooth #16 was April 21, 2016. (Doc. 174-6, p. 61; Doc. 187-1, p. 25). Tooth #12 was never placed on the list for extraction. (Doc. 174-6, p. 60; Doc. 187-1, p. 25). Wilkins was paroled from Vandalia on April 1, 2016, and his teeth were not extracted before his release. (Doc. 187-1, p. 21).

After he was paroled, Wilkins was treated by Dr. Naveed Muhammad at Jackson Park Hospital in Chicago, Illinois on April 4, 2016. (Doc. 174-1, p. 7-8; Doc. 174-8, p. 1). Wilkins was diagnosed with a gingival cyst. (*Id.*). An "incision and drainage of cyst was performed," and Dr. Muhammad prescribed Wilkins 300 mg of Clindamycin for the cyst and recommended that he further see his dental provider "as soon as possible." (Doc. 174-8, p. 1). He also proscribed Tylenol #3 and 600 mg of Motrin.

Wilkins then saw Dr. Veronica DiMario on April 25, 2016. (Doc. 174-1, p. 8; Doc. 174-9, p. 2). Dr. DiMario identified decay into the pulp of tooth #12 and that tooth #12 demonstrated a "severely dilacerated root," which needed "surgical extraction." (Doc. 174-9, p. 3).

Wilkins next saw an oral surgeon, Dr. Botezatu, on May 17, 2016. (Doc. 174-1, p. 9; Doc. 174-10, p. 2). Dr. Botezatu removed tooth #12 due to the severely dilacerated root and "the remaining root fragments at #16." (*Id.*).

**LEGAL STANDARDS**

*I. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Donahoe*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

*II. Eighth Amendment Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment, an deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id*. Accord *Greeno* v. *Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan,* 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno,* 414 F.3d at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton*, 593 F.3d at 620).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 662 (7th Cir. 2016). The

Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood,* 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant[ ] knew better than to make the medical decision [ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry,* 604 F.3d at 441.

### III. Retaliation

"An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). An inmate has a First Amendment right to file grievances and lawsuits. *Id.; Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). In order to prevail on a claim of retaliation, a plaintiff must show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). Thus, the plaintiff must set forth a chronology of events and show that his litigation activities were a motivating factor for an adverse action. *DeWalt,* 224 F.3d at 618. In this context, an adverse action is one that would chill or deter a person of ordinary firmness from exercising a First Amendment right. *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982). Once the plaintiff meets his burden, the burden shifts to Defendants to show that the harm would have occurred anyway.

*Greene v. Doruff,* 660 F.3d 975, 979 (7th Cir. 2011).

## ANALYSIS

The Court must first settle which teeth are at issue in this lawsuit. Dr. Overall insists that the subject of Wilkins's claim is only the treatment of the wisdom tooth, tooth #16. (Doc. 170, p. 4; Doc. 187, p. 2). In support of this assertion, Dr. Overall references the Complaint generally and points to Interrogatory #3 sent to Wilkins, in which he responded to the question "[l]ist each part of your body that you claim was injured as a result of the incidents, and for each part of your body so injured…" by writing "wisdom tooth, headaches, physical, mental, and emotional trauma flashbacks, loss of sleep." (Doc. 187-2, p. 2).

The Court disagrees with Dr. Overall's characterization of the case as being limited to her treatment of tooth #16. Liberally construing the Complaint, as it must do, the Court previously found that Wilkins stated a deliberate indifference claim against Dr. Overall for refusing to "pull his *teeth* on an emergency basis" and the only two teeth addressed herein have been tooth #12 and tooth #16. (Doc. 16, p. 5) (emphasis added). *See Rodriguez.,* 577 F.3d at 821. The fact that Wilkins chose to only address the wisdom tooth, tooth #16, in the discovery response does not amend the Complaint. Rather, his interrogatory response may be used as evidence to show that the only real issue is with the treatment of one tooth, not more. *See* FED. R. CIV. P. 56(c)(1). Therefore, the Court finds that Wilkins's is proceeding on an Eighth Amendment claim against Dr. Overall for treatment regarding tooth #12 and tooth #16.

### I. Motion for Summary Judgment filed by Dr. Overall

### a. Eighth Amendment Claim of Deliberate Indifference

Dr. Overall does not contest that Wilkins suffered from serious medical needs but argues that she did not act with deliberate indifference in opting to promptly treat Wilkins with Motrin and Clindamycin. (Doc. 174, p. 5; Doc. 187, p. 2). She cites the deposition testimony of Dr. Barr,

Wilkins's expert, in which Dr. Barr testified that Clindamycin is an antibiotic used to treat dental infections, and Motrin can be used to treat complaints of dental pain. (*Id.;* Doc. 174-12, p. 18). Because Dr. Barr testified that these medicines can be used to treat dental infections, Dr. Overall contends that no reasonable argument can be made that her treatment decision was "something approaching a total unconcern for the prisoner's welfare in the face of serious risks" or "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." (Doc. 174, p. 6) (quoting *Rosario v. Brawn,* 670 F. 3d 816, 821 (7th Cir. 2012); *Snipes v. DeTella,* 95 F. 3d 586, 592 (7th Cir. 1996)).

Dr. Overall further argues that her decision to place Wilkins on the extraction list rather than order immediate extractions of tooth #12 and tooth #16 also does not qualify as deliberate indifference. (Doc. 174, p. 6; Doc. 187, p. 5). She states that Dr. Barr's belief that the extraction should have occurred sooner is merely a difference of opinion on the timing of extraction and the evidence supports that Dr. Overall provided, at a minimum, adequate care. (Doc. 174, p. 6-13). Specifically, Dr. Overall points to the care Wilkins received following release from Vandalia to support her argument. (*Id.* at p. 11). None of the three medical providers who treated Wilkins subsequent to his release diagnosed him with an infection, acute infection, or any emergent dental condition. (*Id.* at pp. 12-13; Doc. 187, p. 5). Dr. Muhmmad diagnosed Wilkins with a gingival cyst, which he drained, noted that Wilkins was in good condition, prescribed Clindamycin, and recommended for Wilkins to follow-up with a dental provider. (Doc. 174, p. 12). He provided virtually the exact same treatment as Dr. Overall. (*Id.*). Dr. DiMario did not prescribe Wilkins any antibiotic or pain medication at all. (*Id.*). Neither Dr. Muhammad nor Dr. DiMario ever recommended rushing Wilkins into an extraction. (*Id.*). Therefore, Dr. Overall argues there is no evidence to support the conclusion that immediate extraction was required.

Finally, Dr. Overall contends that Wilkins has not established that Dr. Overall's conduct

caused him further harm. She cites Seventh Circuit precedent requiring plaintiffs who allege that "prison officials delayed rather than denied medical assistance" to provide verifying, medical evidence that a delay in treatment caused some degree of harm. (Doc. 174, p. 4) (citing *Williams v. Liefer,* 491 F. 3d 710, 714) (7th Cir. 2007). Dr. Overall argues that Wilkins cannot put forth medical evidence confirming that the delay was detrimental, and so, summary judgment must be granted in her favor. (*Id.*; Doc. 187, p. 4).

The Court finds that there is an issue of material fact regarding whether Dr. Overall provided constitutionally inadequate treatment for tooth #12 and tooth #16. A review of the facts in the light most favorable to Wilkins assumes that his dental infections required prompt treatment. Dr. Barr, Wilkins's expert, concluded that tooth #12 and tooth #16 should have been extracted immediately upon diagnosis. (Doc. 172-7, p. 5-6). He reported that extraction would have mitigated pain and infection and stated that "a qualified dentist should have been able to perform this treatment within 20 minutes." (*Id.*). Dr. Barr further reported that an abscess in a tooth, if left untreated, can travel into the adjacent sinus and potentially reach the brain, and Dr. Overall agreed with this conclusion. (Doc. 174-6, p. 68). Additionally, Dr. Jackson testified that "[a]ny infection is serious" and "in extreme cases a dental abscess can result in death if it spreads to the brain[.]" (Doc. 172-4, pp. 9, 27). Finally, a sense of urgency could be interpreted from Dr. Muhammad's medical note which stated, "patient was also encouraged to see a dentist as soon as possible." (Doc. 174-8, p. 1). Despite the seriousness nature of dental infections, Dr. Overall treated Wilkins only with antibiotics and pain medicine and required Wilkins to wait months for extractions he never actually received. A reasonable jury could find Dr. Overall's treatment decision deliberately indifferent to the risk the dental infections posed to Wilkins's health.

Even assuming that first treating Wilkins with antibiotics was constitutionally adequate treatment for tooth #12 and #16, Dr. Overall and the retained experts on both sides agree that

antibiotics were not a permanent solution to Wilkins's dental infections and that both teeth needed to eventually be extracted. (*See* Doc. 172-4, p. 8; Doc. 172-6, pp. 6, 14; Doc. 174-6, pp. 51, 57-58, 67; Doc. 174-12, p. 46; Doc. 185-3, p. 5). Dr. Overall testified that antibiotics only "work for a time, and then the same problem will come back," and that she recommends for patients to receive extraction once they "complete the antibiotic." (Doc. 174-6, pp. 67, 69). She stated that she normally prescribes antibiotics to patients for seven to eight days and prescribed Wilkins antibiotics for eight days on December 3, 2015 for tooth #16 and for another eight days on February 25, 2016 for tooth #12. (Doc. 174-6, pp. 54, 58). But Wilkins's teeth were not extracted once he finished the antibiotics. Rather he was placed on the dental extraction wait list for the extraction of tooth #16, with a projected extraction date of April 21, 2016, and tooth #12 was never recorded on the list.

By the end of March, Wilkins was still waiting for extraction procedure and complaining of pain and swollen gums. (Doc. 172-2, p. 4). Three days after his release in April, he went to the emergency room at Jackson Park Hospital for dental issues. (Doc. 174-8). The treating physician, Dr. Muhammed, drained a gingival cyst and prescribed a narcotic and a higher dosage of Motrin. (*Id.*; Doc. 172-4, p. 39). A specific tooth is not indicated in reference to the cyst or the prescriptions, but this appears to be a similar type of dental infection already treated by Dr. Overall on February 25, 2016, with Clindamycin. (*See* Doc. 172-6, p. 19) (Dr. Jackson describing the infection on February 25 as a "gingival cyst"). Based on the record, a reasonable jury could conclude that Dr. Overall, knowing that antibiotics were not a permanent solution to Wilkins serious infections or pain, departed "from the professional norm…[and] acted deliberately indifferent to [Wilkins's] health" *Gayton,* 593 F.3d at 622 (citation omitted), by not promptly extracting his teeth or providing any kind of alternative treatment and allowing Wilkins to wait for months without a permanent treatment solution. *See Dent v. McBride,* 751 F. App'x 915, 918 (affirming summary

judgment and finding that the plaintiff received reasonably timed treatment where the dentist took an x-ray, performed numerous exams, prescribed different types of antibiotics and pain medicines, and then referred the plaintiff to a specialist ).

Likewise, there is an issue of fact regarding whether Dr. Overall acted with deliberate indifference in the treatment of Wilkins's associated pain. Dr. Overall provided Wilkins Motrin on December 3, 2015, February 25, 2016, and March 3, 2016, but Wilkins testified that the medicine provided "wasn't working for the pain." (Doc. 174-4, p. 9). He complained about pain regarding tooth #12 during his dental visits, and he submitted offender requests dated January 17, 2016, February 29, 2016, March 15, 2016, and March 22, 216, describing his dental pain as "traumatic" and "excruciating." (Doc. 172-2, p. 2-4). In the offender requests, he does not specify which tooth is troubling him but refers to dental issues that have not been resolved since arriving at Vandalia, which suggests he was complaining about tooth #16. (*Id.*). Specifically, in the offender request dated March 22, 2016, Wilkins wrote that he did not have any pain medication. (Doc. 172-2, p. 4). Dr. Barr reported that "[w]ithout pain medication, Mr. Wilkins was likely in excruciating pain." (Doc. 172-7, p. 6). Dr. Overall confirmed that she receives copies of the offender requests directed at the dental department or the dentist and reads the requests when the patient comes in for an exam. (Doc. 174-6, pp. 53, 62, 63). She also testified, based on her dental experience, that a patient with Wilkins condition would likely be in pain and that extracting Wilkins tooth would have mitigated the pain. (Doc. 174-6, pp. 55. 67). With this knowledge, rather than extract Wilkins's teeth in a timely manner, refer him to an outside oral surgeon who could promptly extract the teeth, or provide alternative treatment, Dr. Overall continued to prescribe Wilkins ineffective pain medicine.

Furthermore, Wilkins has sufficiently provided evidence that a delay in receiving adequate treatment caused him harm. "A detrimental effect occurs when the delay 'unnecessarily prolong[s]

and exacerbate[s]' pain." *Stanbridge v. Mitchell,* 2011 WL 5330642, at *5 (C.D. Ill. Nov. 7, 2011) (quoting *Williams,* 491 F. 3d at 715). The Seventh Circuit has held that a "dentist demonstrates deliberate indifference by failing to treat the patient promptly, thus prolonging the patient's pain, while knowing that the patient may well be in serious pain that is treatable." *Dobbey v. Mitchell-Lawshea,* 806 F. 3d 938, 940 (7th Cir. 2015) (reversing summary judgment where dentist knew the plaintiff had an untreated abscess and pain and did not provide prompt treatment). *See also Arnett*, 658 F.3d at 753 ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). There is evidence in the record to support Wilkins's claim that he experienced prolonged pain during his time at Vandalia due to the denial and delay of adequate treatment. Thus, he has satisfied the "verifying medical evidence" requirement.

As there are multiple material fact issues regarding Dr. Overall's treatment of Wilkins, the Court denies Dr. Overall's motion for summary judgment as to Count 3.

*b. First Amendment Claim of Retaliation*

Wilkins argues that Dr. Overall retaliated against him for filing grievances by deliberately delaying dental treatment and medication. He states that he filed a grievance regarding his inadequate dental treatment on January 24, 2016, and after filing the grievance, Dr. Overall provided him with ineffective and inadequate pain medication, further delayed his extractions, and lied to him about whether his tooth was on the extraction list. (Doc. 185, p. 20). Wilkins asserts that the suspicious timing of these events is circumstantial evidence of retaliation. The Court disagrees.

First, Wilkins has offered no evidence to support his claim that Dr. Overall delayed the extraction of tooth #16 or tooth #12 for retaliatory purposes. The dental extraction list shows and the parties do not dispute that Wilkins was placed on the dental extraction list on December 3,

2015, for tooth #16 with the projected date of April 21, 2016, prior to filing the grievance. (Doc. 172-8; Doc. 187-1, p. 25). Nothing in the record supports the contention that this projected date was somehow modified or pushed back after he filed the grievance. Mary Klein, who was serving as the healthcare unit administrator at Vandalia in 2015 and 2016, testified that there was around a four month wait for every inmate listed on the dental extraction list, not just for Wilkins. (Doc. 172-9, p. 18).

Furthermore, Dr. Overall's dental records indicate that she recorded on January 22, 2016, that tooth #12 needed extracted, before Wilkins filed the grievance on January 24, 2016. (Doc. 172-5, p. 3). She testified that she asked for tooth #12 to be added to the dental extraction list and that Wilkins would have been able to have both teeth extracted the same day because they were in the same quadrant. (Doc. 174-6, p. 56). He would not have been placed at the bottom of the dental extraction list and forced to wait an additional four months for Dr. Overall to extract tooth #12. (*Id.*).

To the extent that the absence of tooth #12 on the extraction list is a causal inference of retaliation, Dr. Overall rebuts the inference by explaining that she does not place inmate names on the extraction list herself and that she sometimes goes for "a very long period of time" without checking the accuracy of the list. (Doc. 174-6, p. 60). Verifying the accuracy of the dental extraction list is not her job, and it is the dental assistant who looks at the list and makes necessary changes. (*Id.*). Her rebuttal is supported by Mary Klein, who testified that the dental assistant is responsible for maintaining the dental extraction list and places inmates on the extraction list at the dentist's direction. (Doc. 172-9, p. 16-17). In the dental chart following the January appointment, Dr. Overall twice recorded that Wilkins was on the extraction list for tooth #12, confirming that she believed that tooth #12 had in fact been added to the list at her request. (Doc. 172-5, p. 3; Doc. 174-6, p. 56). There is no evidence supporting the claim that Dr. Overall

knowingly lied to Wilkins regarding the placement of tooth #12 on the extraction list.

Second, as to the continuous prescribing of ineffective pain medicine, it is accurate that after filing the January 24, 2016 grievance, Dr. Overall continued to prescribe Wilkins only Motrin for his pain. However, she also only prescribed Wilkins Motrin prior to the grievance being filed. Dr. Overall testified that she is not able to provide any pain medicine other than Motrin and Tylenol. (Doc. 174-6, p. 23). Dr. Jackson confirmed that the prescribing of narcotics is heavily restricted in the prison setting. (Doc. 172-4, pp. 39-41). Again, Wilkins has not presented any evidence which indicates that Dr. Overall's decision to continue providing Motrin for Wilkins's pain was out of retaliation. In fact, when asked why he believed that Dr. Overall retaliated against him, Wilkins testified, "It seemed that way." (Doc. 174-4, p. 11). The Seventh Circuit has held that "suspicion is not enough to get past a motion for summary judgment." *Kidwell v. Eisenhauer,* 679 F. 3d 957, 966 (7th Cir. 2012) (internal citations and quotations omitted). Accordingly, Dr. Overall is entitled to summary judgment for Count 1.

## *II. Partial Motion for Summary Judgment filed by Wilkins*

Wilkins has also filed a motion for summary judgment arguing that Dr. Overall's treatment (1) unnecessarily prolonged Wilkins's pain for months, while he waited for extractions that never came; (2) exacerbated tooth #12; and (3) ignored risks of serious harm — including death — from an untreated infection. (Doc. 175, p. 11).

As stated, when viewed in the light most favorable to Wilkins, a reasonable juror could conclude that Dr. Overall acted with deliberate indifference. However, the opposite could also be true. In support of her argument that her treatment decisions were not conducted with deliberate indifference, Dr. Overall has presented the expert report of Dr. Jackson. Dr. Jackson reported that Dr. Overall's decision to treat Wilkins with Motrin and Clindamycin and extract at a later date is a common approach to treating dental infections. (Doc. 172-6, p. 20-21). As argued by Dr. Overall,

Dr. Barr also agreed that Clindamycin is an antibiotic that can be used to treat dental infections and Motrin can be used to treat complaints of dental pain. (Doc. 179, p. 12).

Additionally, Dr. Jackson concluded that he would not classify the condition of tooth #16 or tooth #12 as extreme cases that warranted immediate extraction or referral for immediate extraction. (Doc. 172-6, pp. 17, 21). This conclusion is supported by Wilkins's medical records, which indicate that routinely he had normal vital signs, not indicative of any acute infection, and he did not experience fever or any nausea. (Doc. 172-6, p. 16). Additionally, Wilkins was never diagnosed with an acute periapical abscess while at Vandalia, and the medical records from the three treating providers following Wilkins's release also do not include a diagnosis of acute infection or an emergent dental condition.

As to the claim that Dr. Overall's delay in treatment exacerbated the injuries to tooth #12, which deteriorated from having moderate cavities on December 3, 2015, to severe decay and becoming non-restorable by February 25, 2016, Dr. Jackson testified, "decay doesn't advance that quickly." (Doc. 172-4, p. 19). He pointed out that along with the initial diagnosis of moderate cavities on December 3, 2015, Dr. Overall also noted "questionable prognosis." (*Id.*; Doc. 172-5, p. 3). Dr. Overall testified that Wilkins was not required to have tooth #12 extracted. Upon release, he could have opted for a root canal and a crown in order to keep the tooth. (Doc. 174-6, p. 67). All this evidence, when viewed in the light most favorable to Dr. Overall, is sufficient for a reasonable jury to conclude that she did not act with deliberate indifference when treating Wilkins.

Furthermore, issues of fact exist regarding Wilkins claim that he suffered severed and inadequately treated pain. There is evidence to support the contention that he was aware he could buy additional pain medicine at the commissary but chose not to do so. (Doc. 179, pp. 5, 13, 14). He also did not attend his dental appointment on March 30, 2016, and opted to go to the law library instead. (Doc. 179, p. 14). Finally, it is not recorded in Wilkins's dental chart that he complained

of pain for tooth #16 at his January, February, or March exams with Dr. Overall.

As there is sufficient evidence for a reasonable jury to conclude that Dr. Overall provided constitutionally adequate treatment, the Motion for Partial Summary Judgment filed by Wilkins is denied.

### DISPOSITION

For the reasons provided, the Motion for Summary Judgment (Doc. 170) filed Dr. Overall is **GRANTED in part** and **DENIED in par**t. The Motion for Partial Summary Judgment (Doc. 175) filed by Wilkins is **DENIED**. The First Amendment claim for retaliation (Count 1) is **DISMISSED with prejudice**. This action will proceed on the Eighth Amendment claim against Dr. Overall for deliberate indifference (Count 3).

A telephone conference will be set at a later date to set firm dates for a final pretrial conference and jury trial. In the meantime, the parties are encouraged to discuss whether a settlement conference would be beneficial and, if so, request a referral to a magistrate judge for that purpose.

**IT IS SO ORDERED.**

**DATED:   March 17, 2021**

                                               _s/Stephen P. McGlynn_
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**